437 A.2d 1240

James M. WILTROUT and Emma Wiltrout, Individually,

v.

CIRCLE MOBILE HOME SALES, INC., t/d/b/a Lincoln Mobile Home Sales and Frank Rizzo, Individually and Winifred Rizzo, Individually, and Frank and Winifred Rizzo, t/d/b/a Lincoln Mobile Home Company, and the Bell Telephone Company of Pennsylvania, Jointly and Severally.

**Appeal of BELL TELEPHONE COMPANY.**

Superior Court of Pennsylvania.

Argued Nov. 11, 1980.

Filed Dec. 4, 1981.

Petition for Allowance of Appeal Denied April 2, 1982.

132

James F. Manley, Pittsburgh, for appellant.

Patrick H. Mahady, Greensburg, for Wiltrout, appellees.

Rabe F. Marsh, Greensburg, for Circle, appellees.

Before HESTER, BROSKY and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Plaintiffs-appellees filed this present action in trespass against the owners of a piece of land (referred to hereinafter as the Rizzo appellants, or the Rizzo group), and against Bell Telephone Company of Pennsylvania. The trial culminated in verdicts for the husband-appellee for $150,000 and for the wife-appellee for $20,000, and a verdict in favor of the Rizzo group. Motions for new trial and for judgment n.o.v. were refused by the lower court and Bell Telephone has filed this appeal.

James M. Wiltrout, husband-appellee (hereinafter referred to as appellee), was employed at the time of the accident by Penn Line Service, Inc. That company had a contract with Bell Telephone Company to perform work on the Bell Telephone systems, involving the placing, removing, or rearranging of telephone facilities.

On the morning of the accident, June 6, 1975, appellee and his foreman, a Mr. Snyder, had gone to the Bell Telephone office and been given their assignment for the day. Appellee had climbed a telephone pole across the street from the Rizzo premises and removed wire from the pole. He and Snyder then came on the Rizzo premises in an area where Bell Telephone had a right-of-way, tested the telephone pole there by probing with a screwdriver, hitting it with a hammer, and shaking the pole. Appellee then climbed the pole and was engaged in removing the wires when the pole snapped off at its bottom, causing appellee to fall to the ground, injuring him.

After the accident it was discovered that the pole was rotted at its core about 12 to 18 inches below the ground level, although, even in the area below the surface, the exterior wood seemed hard and strong. The pole had been in position about 18 years; the defect in the interior could have been detected by a boring test not usually done until a pole was in place for about 20 years.

Bell Telephone's first contention on appeal is that it was a "Statutory Employer" of appellee, liable to pay workmen's

compensation benefits, if required, along with his actual employer Penn Line Service, and therefore immune from liability in tort to the plaintiffs.

■ 77 Purdon's Statutes, Section 52, defines a Statutory Employer as follows:

An employer who permits the entry upon premises occupied by him or under his control of the laborer or an assistant hired by an employee or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employee or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his employee.

The lower court's opinion properly recites the five conditions, established in legal precedents, including *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), which are necessary to create the relationship of statutory employer, specifically:

(1) An employer who is under contract with an owner or one in position of an owner;

(2) Premises occupied by or under the control of such employer;

(3) A subcontract made by such employer;

(4) Part of the employer's regular business entrusted to such subcontractor; and

(5) An employee of such subcontractor.

The lower court and the parties concede that conditions 1, 2, 3, and 5 are present in this case; thus Bell is (1) an employer, (2) occupying and controlling the right-of-way, (3) with a subcontract made with Penn Line Service, and (5) appellee is an employee of the subcontractor, Penn Line Service. The lower court stated in its opinion:

[T]he real question centers around number 4, i.e.—Was a part of Bell Telephone's regular business entrusted to the plaintiff's employer Penn Line Service?

In the instant case, the question then boils down to whether or not taking down of telephone lines was a part

of the function and duty of Bell Telephone Company in the performance of its regular business of providing telephone communications for its customers, or whether or not it was incidental work of maintenance and not necessarily a part of Bell Telephone's regular business. See *McDonald vs. Levinson Steel Co.*, 302 Pa. 287 [153 A. 424] (1930).

After review of the transcript in question, it is the opinion of this Court that as a matter of law, Bell Telephone Company was not in the position of statutory employer with the plaintiff James M. Wiltrout.

■ The facts generally applicable in this case to the legal problem of whether Bell Telephone was the "Statutory Employer" of appellee are not really in dispute. At the close of appellees' case in chief, counsel read into evidence portions of the Amendment to Co-Defendant's New Matter:

1. At all times material herein, the Defendant, The Bell Telephone Company of Pennsylvania, was the owner of the telephone pole referred to in the Plaintiffs' Complaint.

2. At all times material herein, the telephone pole was owned, maintained and possessed by the Bell Telephone Company as part of its regular course of business.

3. On or about the 12th day of November, 1974, the Defendant, The Bell Telephone Company, entered into an agreement with Penn Line Service . . . to remove various telephone poles within the Bell Telephone System.

Appellee and his associate Snyder testified that at the time of the accident, appellee and Snyder were in the course of their employment for Penn Line Service performing work which they were assigned by Bell Telephone, under the contract with Penn Line Service. The wire was being removed and thereafter the pole would have been removed, as the record establishes, as part of the process of substituting underground wiring for surface wiring on poles. Contrary to the conclusion of the court below, as quoted above,

we believe that the work being done by appellee and Snyder at the time of the accident was part of the regular business of the telephone company, specifically, the maintenance of telephone wires to provide facilities to its customers for communication by telephone.[1] The case on its facts is clearly distinguishable from *McDonald v. Levinson Steel Co.*, supra, where Levinson, whose "regular business" was erecting steel buildings for others, was held not to be engaged in that "regular business" where Levinson had contracted with another firm for the latter to construct a building for Levinson's own use. *Stipanovich v. Westinghouse Corp.*, 210 Pa. Superior Ct. 98, 231 A.2d 894 (1967).

A second contention of appellant is that appellee's evidence affirmatively establishes that there was no breach of duty by Bell Telephone.

The proof of negligence on the part of Bell Telephone in this case seems to derive almost entirely from the unexpected collapse of the pole under the weight of the appellee, the discovery thereafter that the interior of the wood below the ground level was in fact rotted and that this rotting could have been discovered by a fairly routine boring test (but not by the tests performed by appellee before climbing the pole, i.e., probing with a screwdriver, "sounding" by striking it with a hammer, and shaking the pole), and the lack of inspection of the pole during the years it was in place. The trial judge submitted to the jury the question of proof of negligence on his interpretation of the standards set up in *Gilbert v. Korvette's Inc.*, 457 Pa. 602, 327 A.2d 94 (1974) for proof by circumstantial evidence, and appellant does not press at the appellate level any complaint that the charge was improper. Instead, appellant in effect argues that all of the tests it might have made to check the soundness of the

1. Appellant's brief does not discuss the question of whether maintenance and replacement of the telephone poles and the wires is a part of the appellant's "regular business". The general problem is preserved on appeal, nevertheless, as an implicit part of Argument A, discussed in pages 8–12 of the brief. We think, therefore, that the issue has not been waived. See *Turner Construction Co. v. Hebner et al.*, 276 Pa. Superior Ct. 341, 419 A.2d 488 (1980).

pole (except the boring test, which, according to appellee, was not due for five years) were made by appellee and indicated that the pole was sound.

We think the evidence of negligence on the part of the phone company was questionable, but, in any event, since the phone company was a Statutory Employer, as we have concluded above, the court should not have submitted the issue of the negligence of the phone company to the jury.

The Rizzo group has filed a cautionary brief pointing out that the verdict and judgment in its favor has not been appealed from, and should not be disturbed, irrespective of our decision on the phone company's appeal. This is correct.

Judgment reversed and remanded with instructions to enter judgment n.o.v. for appellant Bell Telephone Company of Pennsylvania.

HESTER, J., concurs in the result.